**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | No. CR 05-788-PHX-MHM |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Robert Cruz-Guerra, ) | |
| Defendant. ) | |

On August 2, 2005, a Grand Jury returned an indictment charging Defendant with three counts: (1) Felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2); (2) Possession of an unregistered Sawed-Off Shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871; and (3) Possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). Defendant has filed a Motion to suppress evidence seized from his apartment in violation of his Fourth Amendment rights. (Dkt#18). Defendant contends that the Phoenix Police Department who conducted the search and seizure violated the "knock and announce" rule set forth in 18 U.S.C. § 3109 and governed by the Fourth Amendment. On January 18, 2006, the Court held an evidentiary hearing on Defendant's Motion to suppress and oral argument was presented the same day.

/ / /

/ / /

## I.	Factual Background

On July 5, 2005, Drug Enforcement Bureau ("DEB") Detectives of the Phoenix Police Department ("PPD") executed a search warrant at Defendant's apartment located at 1603 S. 4th Street, Phoenix, Arizona. The search warrant affidavit related that a PPD officer of the DEB had purchased from the apartment on June 29, 2005, two crack cocaine rocks from a Hispanic female.

The apartment is a single level, four bedroom apartment. The entry team was led by Sargent Floyd Thompson, a 22 year veteran of the PPD. Sargent Thompson and his team approached the front door at 8:14 a.m., knocked and simultaneously announced "Phoenix Police, search warrant, open the door." They yelled this three times, in rapid succession, and just prior to the completion of the third announcement an entry tool was used to breach the security door and a battering ram was used to breach the front door. Based upon Sargent Thompson's testimony, it is estimated that a second or two expired between the time the PPD breached the security door that was located just a few inches outside the front door, and breached the front door. As the front door was breached, Sargent Thompson yelled "down on the ground" and the PPD entered the apartment. Upon entering the apartment the police discovered the Defendant, in the doorway, and a woman, Florinda Sierra, with four children. Once inside the apartment the PPD discovered and seized three firearms: (1) a Lorcin .380 caliber handgun; (2) a Ruger .45 caliber handgun; and (3) a New England Arms 20 gauge shotgun. The PPD also discovered various quantities of cocaine base. Shortly after the arrest, the Defendant made a statement acknowledging ownership of the items.

Sargent Thompson taped the execution of the search warrant at Defendant's apartment and the original tape was played before the Court at the evidentiary hearing held on January 18, 2006. Based upon Sargent Thompson's assessment from his first knock on the door to his order of "down on the ground" as the door was opened approximately eleven and one-half seconds expired. Defendant, on the other hand, in disputing this amount of time, measured the time beginning with the conclusion of the word "door" of Sargent Thompson's first "knock and announcement" of "Phoenix Police, search warrant, open the door" to his order

- 2 -

as the door was being opened for the occupants to get "down on the ground." In measuring this time period Defendant concluded that, at best, approximately nine seconds expired.[1] At oral argument the government acknowledged that in its best estimate, approximately eight to ten seconds expired between the conclusion of the first knock and announcement of "Phoenix Police, search warrant, open the door" and Sargent Thompson's order for the occupants to get "down on the ground" as the door was being opened.[2]

**II.       Standard Governing "Knock and Announce" Entries**

In Wilson v. Arkansas, 514 U.S. 927, 933-34, 115 S.Ct. 1914, 1918, 131 L.Ed.2d 976 (1995), the Supreme Court noted that under 18 U.S.C. § 3109, when a law enforcement officer enters a dwelling pursuant to a search warrant, he must announce his purpose and either wait a reasonable amount of time or be refused admittance before forcibly entering the residence. 18 U.S.C. § 3109 codifies the common law rule of announcement, which the Supreme Court has held to be "an element of the reasonableness inquiry under the Fourth Amendment." United States v. Granville, 222 F.3d 1214, 1217 (9th Cir. 2000) (citing United States v. Ramirez, 523 U.S. 65, 73, 118 S.Ct. 992 (1998).[3]  "[A]lthough the standard generally requires the police to announce their intent to search before entering closed

---

[1] At the evidentiary hearing, Defendant offered the expert testimony of Mr. Slobodan Popovic regarding his estimate of the time that expired between the PPD's first "knock and announcement" and the entry at Defendant's apartment. Defendant deemed this testimony necessary because the copy of the tape that was produced to Defendant played at a speed faster than what had occurred. However, at the hearing, Defendant set forth that, at best, nine seconds expired between the completion of the first "knock and announcement" and the entry by the PPD.

[2] In reviewing the original tape, the Court finds that just over eight seconds expired from the conclusion of the word "door" of Sargent Thompson's first knock and announcement to the completion of his order for the occupants to get "down on the ground" as the door of apartment was being opened.

[3] 18 U.S.C. § 3109 does not apply directly to state actors; however it is used as a guide in conducting the "reasonableness" inquiry dictated by the Fourth Amendment. United States v. Moore, 91 F.3d 96 (10th Cir. 1996); see also United States v. Ankeny, 358 F. Supp.2d 998, 1000 (D. Or. 1998).

1 premises, the obligation gives way when officers have a reasonable suspicion that knocking
2 and announcing their presence, under the particular circumstances, would be dangerous or
3 futile, or ⋯ would inhibit the effective investigation of the crime by, for example, allowing
4 the destruction of evidence," United States v. Banks, 540 U.S. 31, 36, 124 S.Ct. 521 (2003)
5 (citing Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)).
6 When executing a warrant silent about a "no-knock" entry, "if circumstances support a
7 reasonable suspicion of exigency when the officers arrive at the door, they may go straight
8 in." Id.

9 "[R]easonableness [is] a function of the facts of cases so various that no template is likely
10 to produce sounder results than examining the totality of circumstances in a given case..."
11 Banks, 540 U.S. at 35-36.  There is no fixed minimum amount of time officers must wait
12 before entering.  United States v. Allende, 486 F.2d 1351, 1353 (9th Cir. 1973).  "The
13 determination of whether an officer was justified in forcing entry after announcing his
14 presence and purposes does not turn on any hard and fast time limit, but depends upon the
15 circumstances confronting the officer serving the warrant."  Granville, 222 F.3d at 1218
16 (quoting United States v. Goodson, 165 F.3d 610, 614 (8th Cir. 1999).  When the
17 circumstances known to the law enforcement provide reasonable suspicion of exigent
18 circumstances, this can shorten or eliminate the time required between knock and announce
19 entry. Banks, 540 U.S. at 37-38.

20 **III.   Analysis**

21     The issue in the present case is whether under an analysis of the "totality of the
22 circumstances" it was reasonable for the PPD to enter Defendant's apartment after
23 approximately eight to ten seconds from the conclusion of the PPD's first knock and
24 announcement of their presence at Defendant's door to their forcible entry.

25     To properly analyze the reasonableness of the PPD's actions the Court must first look
26 at what suspicion justified their actions in obtaining the search warrant.  Here, the affidavit
27 in support of the search warrant provided that a drug transaction had recently taken place in
28 which narcotics were purchased from a female residing at the Defendant's residence.  Thus,

- 4 -

1  this information supported the requisite probable cause that there were drugs inside the
2  residence. However, absent from the affidavit was any particularized indication that the
3  occupants posed a specific threat of harm by, for example, possessing weapons or posed a
4  specific threat to destroy any evidence inside the apartment.  Thus, in reviewing these
5  circumstances, the question remains whether the amount of time the PPD waited from first
6  announcing their presence at Defendant's door and breaking in was a "reasonable" amount
7  of time under the "totality of the circumstances."

8        The government bases their argument that the PPD's actions were reasonable primarily
9  on the recent Supreme Court decision in United States v. Banks, 540 U.S. 31, 36, 124 S.Ct.
10 521 (2003) In Banks, Las Vegas, Nevada police made entry into a residence where illegal
11 drug sales were made. Police called out "police search warrant" and knocked on the front
12 door. After waiting 15-20 seconds with no answer, law enforcement broke open the door and
13 entered. Located inside were "weapons, crack cocaine, and other evidence of drug dealing."
14 Id. at 33.  The exigency pointed to by the government and deemed persuasive by the
15 Supreme Court was the general suspicion of the disposal of evidence. Id. at 40.   The
16 exigency arose with the knock and announce, due to the easily disposable nature of the drugs,
17 small residence and generalized actions of drug dealers regarding the storage of their drugs.
18 Id. The Supreme Court noted that generally a "prudent dealer will keep (cocaine) near a
19 commode or kitchen sink" therefore, "when circumstances are exigent because a pusher may
20 be near the point of putting his drugs beyond reach, it is imminent disposal... that governs
21 when the police may reasonably enter... And 15 to 20 seconds does not seem an unrealistic
22 guess about the time someone would need to get in a position to rid his quarters of cocaine."
23 Id..

24       Conversely, Defendant relies on the Ninth Circuit's ruling in U.S. v. Granville, 222
25 F.3d 1214, 1217-18 (9th Cir. 2000). In Granville, the court held that a five second wait after
26 the police knocked and announced their presence was not a sufficient amount of time before
27 executing a forcible entry. Id. at 1218. The officers in Granville approached defendant's
28 residence at 7 a.m., to execute a search warrant for narcotics, and tried unsuccessfully to open

1 the door with a pass key.  Police then knocked loudly three times and stated, "Oakland Police
2 Officer, search warrant, open the door."  After waiting approximately five seconds  without
3 any response, they forced the door open.  Id. at 1217.  The Ninth Circuit reversed the district
4 court's ruling  by holding that the five seconds the police waited before forcing their way into
5 the defendant's apartment simply did not provide the defendant with a reasonable opportunity
6 to ascertain who was at the door and to respond to the police's request for admittance.  Id.
7 "This was especially apparent in light of the fact that the warrant was executed early in the
8 morning when it was likely the occupants of the B Street apartment would be asleep."  Id.
9 at 1218.  The Ninth Circuit also noted that an "immediate entry" was not justified because
10 the government relied only "on generalizations and stereotypes that apply to all drug dealers"
11 in support of their position that the defendant may have been armed.  Id. at 1219.  The Ninth
12 Circuit stated, "[o]ur cases have made clear that generalized fears about how drug dealers
13 usually act or the weapons that they usually keep is not enough to establish exigency."  Id.
14 (citing United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 199) see also Richards, 520
15 U.S. at 394, 117 S.Ct. at 1416 (rejecting a blanket exception to the knock and announce rule
16 for searches in drug cases).

17 The government argues that this Court should extend the holding in Banks to provide
18 that eight to ten seconds based upon a generalized suspicion of the destruction of drugs and
19 the existence of weapons is Constitutionally permissible.  However, this Court cannot side
20 with the government's reasoning in light of the obviously analogous and controlling
21 precedent set forth in Granville.  Unlike Banks, this case involves only an eight to ten second
22 expiration from the first "knock and announcement" to entry  by authorities based upon the
23 generalized suspicion of weapons and the destruction of drugs, not the 15-20 seconds that
24 existed in Banks. Id. at 33.

25 Moreover, there is no controlling authority that would suggest the eight to ten second
26 time period based only on the generalized suspicion of weapons or drugs would be
27 "reasonable."  For instance, at oral argument the government requested that the Court look
28 at persuasive precedent set forth in United States v. Sargent, 319 F.3d 4 (1st Cir. 2003) *cert*

1  *denied*, 540 U.S. 1073, 124 S.Ct. 920, 157 L.Ed. 742 (2003) in which a seven-second wait
2  after police first announced their presence and forcibly entered was deemed Constitutionally
3  sound. However, unlike the present case, in Sargent, the police had belief that the defendant
4  possessed a number of large knives and possible firearms disbursed throughout his
5  apartment. Id. at 6. No such particularized suspicion existed here.

6  The holding of Granville controls the Court's analysis. In Granville the five second
7  wait for entry based only on generalized fears was deemed Constitutionally impermissible.
8  Id. at 1217. Here, this Court is faced with entry into a four bedroom apartment after a time
9  period of only eight to ten seconds. While there is no fixed amount of time authorities must
10 wait before executing a forcible entry, a period of approximately eight to ten seconds as
11 described here, based only on generalized suspicion is not enough.  "The reasons for
12 adhering to precedent and requiring officers to wait a reasonable period of time before
13 forcibly entering a person's home ... are clear and persuasive." Id. at 1218. The Ninth Circuit
14 has repeatedly noted that a reasonable wait "protects citizens and law enforcement officers
15 from violence; ... protects individual privacy rights; and ... protects against needless
16 destruction of private property." Id.; United States v. Contreras-Ceballos, 999 F.2d 432, 435
17 (9th Cir. 1993). These considerations are equally applicable here as Defendant was located
18 just inside the doorway of the four bedroom apartment after only eight to ten seconds expired
19 between the PPD's first "knock and announcement" and entry.

20 Thus, the Defendant's Fourth Amendment rights were violated when the PPD
21 executed the search warrant at the apartment. The evidence seized from Defendant's
22 apartment is the product of an unreasonable search and seizure and will be suppressed. See
23 United States v. DiCesare, 765 F.3d 890, 895 (9th Cir. 1985) (holding that if officers violate
24 "knock and announce" requirement during search the evidence must be suppressed); see also
25 Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (holding that
26 statements obtained that are the result of unlawful entry is the "fruit" of official illegality and
27 subject to exclusion); United States v. Basurto, 497 F.2d 781, 790 (9th Cir. 1974)
28 / / /

1  **Accordingly,**

2  **IT IS HEREBY ORDERED** that Defendant's Motion to suppress is granted.
3  (Dkt#18).

4  DATED this 17th day of February, 2006.

_____
Mary H. Murguia
United States District Judge